UNITED STATES of America, Appellee,

v.

Stanley MOLLICA and Marie Cirillo, Defendants–Appellants.

UNITED STATES of America, Appellee–Cross–Appellant,

v.

Marie CIRILLO, Defendant–Appellant, Cross–Appellee.

Nos. 542, 543 and 1065, Dockets 87–1367, 87–1369 and 87–1370.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1987.

Decided June 10, 1988.

Herald Price Fahringer, New York City (Michael Rosen, Diarmuid White, of counsel), for defendants-appellants.

Alan Hechtkopf, Tax Div., Dept. of Justice, Washington, D.C. (William S. Rose, Jr., Acting Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D.C., Andrew J. Maloney, U.S. Atty. E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, KEARSE and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

Defendant-appellant Stanley Mollica appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Maletz, J.,[1] dated July 29, 1987. Mollica and

---

1. Senior Judge of the United States Court of International Trade, sitting by designation as a United States District Judge.

Marie Cirillo were charged with conspiring to commit certain tax offenses and to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service (IRS), in violation of 18 U.S.C. § 371 (1982); knowingly and willfully making and subscribing and causing to be made and subscribed corporate income tax returns that they did not believe to be true and correct as to every material matter, in violation of 26 U.S.C. § 7206(1) (1982) and 18 U.S.C. § 2 (1982); and knowingly and willfully attempting to evade and defeat income taxes due from Mollica, in violation of 26 U.S.C. § 7201 (1982) and 18 U.S.C. § 2. Both Mollica and Cirillo were convicted of the conspiracy count. Cirillo was also found guilty of making and subscribing false corporate income tax returns, although the district court granted her a judgment of acquittal on this charge. Mollica and Cirillo were both acquitted by the jury of the remaining charges.

This appeal followed. The government also filed a cross-appeal arguing that the district court erred in granting Cirillo a judgment of acquittal on the filing false corporate tax returns charge.

On May 2, 1988, while the appeal was pending, Marie Cirillo died. Because of her death, we vacate her judgment of conviction and remand with instructions to dismiss the indictment as to her. In addition, we do not reach the issues raised in the government's cross-appeal because of the abatement of the prosecution of Cirillo.

As to Mollica, he contends on appeal that his judgment of conviction should be reversed because: (1) the district court amended the conspiracy count of the indictment from that of a conspiracy to impair the IRS in the assessment and collection of income taxes to that of a conspiracy to commit "any" fraudulent act against the

United States; and (2) the court impermissibly allowed the government to argue and the jury to consider whether Robert Matthews was a co-conspirator and whether a "money laundering" scheme involving Matthews was part of the alleged conspiracy to defraud the United States although no nexus was established between the money laundering scheme and the charges in the indictment.[2] We conclude that there was a significant chance that Mollica was convicted of the conspiracy count because of the evidence presented of the money laundering scheme, although it was not established that this scheme was included in the original indictment, and therefore we vacate the judgment of conviction and remand for a new trial on this count.

### I. Cirillo's Appeal

Because of Marie Cirillo's death while the appeal was pending, we must decide the proper way to dispose of her appeal. We were faced with a similar situation in United States v. Floyd, 496 F.2d 982 (2d Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974), in which an appellant died after his appeal had been argued, but before the opinion in the appeal had been filed. Relying on Durham v. United States, 401 U.S. 481, 483, 91 S.Ct. 858, 860, 28 L.Ed.2d 200 (1971) (per curiam), in which the Supreme Court held that death pending direct review of a federal criminal conviction, whether by certiorari or by appeal, abates the prosecution, we vacated the appellant's judgment of conviction and remanded his case to the district court with instructions to dismiss the indictment as to him. 496 F.2d at 984 n. 2. Subsequent to our decision in Floyd, however, the Supreme Court issued its ruling in Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (per curiam), tersely asserting that: "The Court is advised that the petitioner died at New

---

**2.** As Mollica pointed out, although the phrase "money laundering" was used at trial to describe the scheme in which Mollica and/or Cirillo helped Matthews to generate cash which he then used for bribes or for his own personal use, this arrangement does not appear to fit the technical definition of a money laundering scheme. See 18 U.S.C. § 1956 (Supp. IV 1986).

There was no evidence that the cash which Mollica or Cirillo provided to Matthews was the proceeds of any unlawful activity or that anyone transported or attempted to transport any of the money outside the United States. In this opinion, however, we will conform to the language used at trial.

Bern, N.C., on November 14, 1975. The petition for certiorari is therefore dismissed. To the extent that *Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), may be inconsistent with this ruling, *Durham* is overruled."

Other circuits have concluded that *Dove* applies only to petitions for *certiorari,* however, not to appeals of right. *See, e.g., United States v. Pauline,* 625 F.2d 684, 685 (5th Cir.1980); *United States v. Bechtel,* 547 F.2d 1379, 1380 (9th Cir.1977) (per curiam). Courts therefore have continued to hold that when an appellant dies while his or her criminal appeal is pending, the appellant's conviction should be vacated and the indictment dismissed. *See, e.g., United States v. Wilcox,* 783 F.2d 44 (6th Cir.1986) (order); *Pauline,* 625 F.2d at 685; *Bechtel,* 547 F.2d at 1380.

Considering the facts of the instant case, we conclude that it is appropriate to vacate Cirillo's judgment of conviction and remand with instructions to dismiss the indictment as to her. We note, however, that in reaching this conclusion, we are limiting our holding to the facts of this case, and are leaving for another day what disposition should be made of cases involving different factual circumstances, such as cases implicating forfeiture provisions.

## II. *Mollica's Appeal*

### A. Alleged Illegal Practices

Mollica was the owner and sole shareholder of P.M. Excavating, Inc. (P.M.), a construction and excavation company located on Staten Island, New York. Cirillo was the bookkeeper of P.M., as well as Mollica's close personal friend. The government alleged that Mollica, with the help of Cirillo, engaged in several fraudulent practices to evade income taxes for the tax years of 1981, 1982 and 1983. For example, it was alleged that P.M. checks were made payable to individuals and companies that regularly did business with P.M., and then endorsements on the checks were forged and the checks were cashed. The money was then used for a variety of purposes, and the amounts were improperly deducted as business expenses. In addition, the government charged that other items of personal expense were deducted as business expenses, such as Mollica's daughter's college tuition and Cirillo's mortgage payments on her home. Other alleged illegal practices included diverting earned income into "secret" bank accounts without reporting the income on either Mollica's or P.M.'s tax returns, and not reporting interest income received on loans. Mollica and Cirillo's defense was that they did not act with any criminal intent; they claimed that the bookkeeping and reporting errors were inadvertent or the fault of their accountants.

### B. Trial Testimony

At trial, a pivotal issue concerned whether an alleged money laundering scheme involving P.M. and Robert Matthews, the operator of Matthews Industrial Piping, was related to the specific allegations in the indictment. Matthews had been awarded the contract to renovate the Mobil Oil Company bulk storage plant on Staten Island, New York. He subcontracted a part of the excavation work on this project to P.M. P.M. employees and Matthews were allegedly involved in a money laundering scheme that provided Matthews with cash that he used to pay bribes to labor officials and fire inspectors in connection with the work on the Mobil project. Under this scheme, Matthews would make out a check to P.M. for the amount of cash he needed, and Mollica or Cirillo would get the check cashed at a bank where they knew a bank official. Matthews then would receive the cash from Cirillo, less a ten to twelve percent "service charge."

It is difficult to discern the government's position with respect to the relation between the Matthews money laundering scheme and the income tax violations charged in the indictment. Before trial, the defendants requested that the government provide in a bill of particulars the names of any unindicted co-conspirators. Although the government responded that it would provide such a list prior to trial, and it knew of Matthews' involvement in this scheme, it never did provide a list, purport-

edly because of an oversight. In addition, on the second day of trial the government stated that it had decided not to call Matthews as a witness and not to "charge" the defendants with any of the money that was generated through the money laundering scheme.

Nevertheless, the government later called Matthews as a witness. He testified about the scheme and stated that the amount of cash generated was approximately $147,000. At the conclusion of its case, the government argued that Matthews' testimony established that he was engaged in a conspiracy to defraud the government of the United States by laundering money with Mollica. Defendants' counsel objected, questioning how Matthews' testimony could make him a co-conspirator in a tax case in light of the fact that there was no evidence to suggest that Matthews intended to assist anyone in evading taxes. Defendants' counsel also asserted that if they had been on notice that the money laundering scheme was alleged to be part of a conspiracy to defraud the government or to evade taxes, they would have cross-examined Matthews in a different manner so that they could have elicited his state of mind in entering the scheme, including whether he was at all motivated by the idea of evading taxes. When the court asked how the testimony established that Matthews was a co-conspirator in a tax case, the government cited the ten to twelve percent "service charge," arguing that this money was income to Mollica. However, there was no evidence that Mollica kept this money. Matthews had testified that he was told that this money was to be paid to the bank official who helped to facilitate the check cashing. The court ruled that the government could not argue that Matthews or anyone else was an unindicted co-conspirator for three reasons: (1) the government had not provided the list of unindicted co-conspirators that had been requested by the defense; (2) the evidence connecting any alleged unindicted co-conspirator, including Matthews, to the specific allegations in the indictment was marginal; and (3) the defendants would otherwise be highly prejudiced be-cause they relied on the assumption that there were no unindicted co-conspirators when they cross-examined the witnesses.

During the defense case, Rosemarie Klee Mende, an office worker at P.M., testified that P.M. employees including herself were paid in cash and no federal income taxes were withheld. She added that she did not pay any income taxes on her P.M. earnings. Cirillo testified that she handled all of P.M.'s financial matters, and that Mollica had no knowledge of many of her business practices. She added that she signed Mollica's name to the P.M. tax returns. As to the money laundering scheme, Cirillo testified that she told Matthews that she could get cash for him by cashing checks at a bank. She said that in return for cashing these checks, Matthews promised that P.M. would receive excavation work on the Mobil project. She also stated that Mollica was not involved in the money laundering scheme, and that Matthews said he needed the cash for a house, not for bribes. She estimated that approximately $500,000 was generated for Matthews through this scheme.

After this testimony, the court changed its earlier ruling to permit the government to argue that more than two people were involved in the conspiracy; evidently the court concluded that in light of the testimony of Mende and Cirillo, the jury could reasonably conclude that others were co-conspirators. The court also changed its earlier ruling and permitted the government to argue that Matthews was a co-conspirator, apparently because the court believed that Cirillo's testimony indicated that the defendants did not suffer from any lack of notice or any surprise concerning the facts of the Matthews money laundering scheme.

On appeal, Mollica argues that the court erred in allowing the government to argue and the jury to consider whether Matthews was part of the alleged conspiracy because no nexus had been established between the money laundering scheme and the charges in the indictment.

## C. Instructions to the Jury

The conspiracy count of the indictment charged three separate objects:

a) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment, and collection of revenues, to wit: income taxes;

b) to evade and defeat a large part of income tax due and owing by the defendant, STANLEY MOLLICA, to the United States by preparing and causing to be prepared, by signing and causing to be signed, and by filing and causing to be filed false United States Income Tax Returns which failed to report true and correct income and taxes due and owing to the United States, in violation of Title 26, United States Code, Section 7201; and

c) to make and subscribe and cause to be made and subscribed false and fraudulent United States Income Tax Returns which were not true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

J. App. at 17. When the court instructed the jury, it first read verbatim the language concerning the alleged objects of the conspiracy. It then described the crimes that the defendants were charged with conspiring to commit, and gave the instruction now at issue concerning violating 18 U.S.C. § 371:

If two or more persons conspire ... to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each is guilty (of an offense against the laws of the United States.)

The charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy. It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede, or defeat the legitimate functioning of the government through fraudulent or dishonest means.

J. App. at 1064–65. The court then provided an explanation of the elements of conspiracy in general, and added that the government was required to prove that two or more persons had knowingly and willfully entered into the unlawful agreement charged in the indictment.

Mollica contends on appeal that because the court did not add the critical limiting language, "to wit: income taxes" in the instruction at issue and did not designate the Internal Revenue Service as the subject of the fraud, the court improperly expanded the charges beyond those contemplated by the grand jury. He adds that this injury was compounded when the court told the jury that the conspiracy to defraud the United States could be "in any manner or for any purpose." Defense counsel had similarly objected to this instruction when the government had proposed it at trial, stating:

I object to that because it is saying to the jury there may be another kind of conspiracy other than an income tax case. We are not trying arms to Nicaragua and Iran. What the Government is trying to do is expand. If the jury finds other hankie-pankie going on they want the charge.

I say in the context of the record here we are trying income taxes and not payroll taxes or W–2s or anything like that.

J.App. at 765–66.

## D. Amendment of the Indictment

 There are three types of variations between a grand jury indictment and the evidence presented at trial. *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986). First, there is an amendment of an indictment " 'when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them.' " *United States v. Pelose*, 538 F.2d 41, 45 n. 8 (2d Cir.1976) (quoting *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir.1969)). Second, there is a variance

" 'when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.' " *Id.* (quoting *Gaither,* 413 F.2d at 1071). The third type of variation is a constructive amendment, which occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Hathaway,* 798 F.2d at 910.

The Supreme Court in *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960), discussed a situation where the trial evidence amended the indictment by broadening the possible bases for conviction from those contained in the indictment. In that case, the indictment charged the defendant with interfering with interstate commerce in violation of the Hobbs Act by obstructing shipments of sand into Pennsylvania, where the sand was to be used in the construction of a steel mill. At trial, the prosecutor also attempted to prove that the defendant had obstructed the steel mill's export of steel to other states. The Supreme Court stated:

> [W]hen only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened. The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here, ... we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error.

*Id.* at 218–19, 80 S.Ct. at 274. The Court thus reversed the judgments of conviction because of the amendment to the indictment. This holding was reaffirmed by the Supreme Court in *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985), where the Court noted that "[i]n *Stirone* the offense proved at trial was *not* fully contained in the indictment, for trial evidence had 'amended' the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment."

■ Because the instant case involves a prosecution under 18 U.S.C. § 371, we must be especially alert to "subtle 'attempts to broaden the already pervasive and widesweeping nets of conspiracy prosecutions.' " *United States v. Rosenblatt,* 554 F.2d 36, 40 (2d Cir.1977) (quoting *Grunewald v. United States,* 353 U.S. 391, 404, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957)). In light of the current broad range of conduct covered by the federal fraud statutes, it is critical that courts "vigilantly enforce the Fifth Amendment requirement that a person be tried only on the charges contained in the indictment returned by the grand jury." *United States v. Weiss,* 752 F.2d 777, 791 (2d Cir.) (Newman, *J.,* dissenting in part), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). In order to avoid amending an indictment in violation of the Fifth Amendment, the government in fraud cases should "think through the nature of the crime it wishes to allege and then spell out the offense in a carefully drafted indictment, instead of confronting the defendant with its theory of criminality for the first time at trial." *Id.* at 795.

■ In this case, the government claims that the district court's jury charge when read as a whole does not amend the indictment. It is true that when a court reviews a charge to the jury for error, the charge should be viewed in its entirety and not on the basis of excerpts taken out of context. *See United States v. Clark,* 765 F.2d 297, 303 (2d Cir.1985). Nevertheless, we believe that even when the charge is

read as a whole there is a substantial risk that the jury may have believed that it could convict the defendants of a general conspiracy to defraud that did not involve income taxes.

In reaching this conclusion, we note that the position that the government adopted at trial certainly did not help to clarify matters. For example, the prosecutor stated at one point that "this is not just a conspiracy to evade income taxes or to file false returns.... It is a conspiracy to defraud the United States." J.App. at 682–83. In addition, the prosecutor later explained: "These defendants could have been indicted for one count of conspiring to defraud the United States. No tax charges, no conspiracy to commit tax charges. It is a separate and distinct crime...." J.App. at 766. In making this argument about the scope of the conspiracy charge, the government relied on *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). Although *Klein* does indicate that a defendant can be convicted of a general charge of impeding and obstructing the Treasury Department in the collection of income taxes, *id.* at 916, it does not support the proposition that when the indictment specifically alleges a conspiracy to defraud the government by impeding and obstructing the Treasury Department in the collection of income taxes, the defendant can be convicted of a general conspiracy to defraud the government, without showing that the conspiracy was related to income taxes.

Moreover, in this case we are especially concerned that the jury may have relied on the evidence concerning the money laundering scheme when it was deciding whether the defendants had participated in the conspiracy. Although the testimony concerning this scheme referred to certain illegal activities, such as bribing labor officials, the government did not establish that this scheme was part of an income tax conspiracy. For example, there was no evidence that Matthews made an agreement with Mollica and/or Cirillo to enter into this arrangement in order to impair the lawful functions of the IRS. *See Rosenblatt*, 554

F.2d at 42 (noting that when the government charges a defendant with conspiring to defraud the United States, the government must plead and prove an agreement on the essential nature of the fraud). In addition, the mere fact that someone received the money laundering "service charge" was not a proper basis for claiming that the money laundering scheme was part of the income tax conspiracy. There was no evidence that Mollica was to keep the fees, and Matthews testified that he was told that the fees went to a bank official. Nor was there any claim or evidence that a bank official failed to pay taxes on income received. In any event, "[m]ere failure to disclose income would not be sufficient to show the crime charged of defrauding the United States [in the collection of income taxes] under 18 U.S.C. § 371." *Klein*, 247 F.2d at 916.

Therefore, as the government appears to concede, it was not sufficiently established at trial that the money laundering scheme was part of the conspiracy charged in the indictment, or that Matthews participated in an income tax conspiracy. The district court accordingly erred when it ruled that the government could argue that Matthews was a co-conspirator. Considering the evidence of the money laundering scheme, the court's ruling that the government could argue that Matthews was a co-conspirator, the government's arguments, and the court's instruction to the jury on the conspiracy count, we cannot be certain that the jury convicted Mollica of the same conspiracy charge on which the grand jury indicted him. Thus we conclude that there was a constructive amendment of the indictment.

While variances require a showing of prejudice to the defendants in order to constitute reversible error, constructive amendments to an indictment are generally considered prejudicial *per se*. *Weiss*, 752 F.2d at 787. Although it was not necessary for the defendant to establish prejudice in this case, in light of all the circumstances it appears that he may indeed have been prejudiced. For example, the prosecutor stated in his summation to the jury

that "Mr. Matthews came in here and told you about the money laundering scheme, and for starters, whether the scheme[,] whatever the scheme, no matter how you look at it, it was designed to defraud the government." J.App. at 1022–23. During its deliberations, the jury requested that Matthews' testimony describing the money laundering scheme be read back. The jury then acquitted Mollica of each of the substantive counts charging him with filing false tax returns and evading income taxes, although it found both Mollica and Cirillo guilty of conspiracy. It therefore certainly is conceivable that the jury convicted the defendant of conspiracy to defraud the United States because of the evidence presented of the money laundering scheme. In fact, at sentencing, when attempting to explain why the jury returned a guilty verdict on the conspiracy count when it acquitted Mollica of the substantive counts, the prosecutor conjectured:

[A]ll the elements, all the facts that dealt with the entire situation involving Bob Matthews, all of that, he could be convicted of without any conviction specifically on the false return count or the evasion count.

The conviction here if it seeks rationality from the jury may be and of course we don't know, may be a statement by the jury that they believe what happened with respect to the Port Mobil and they believed what happened with respect to some of the other schemes and they did not believe the tax returns....

J.App. at 1108.

## CONCLUSION

In light of our conclusion that there was a constructive amendment of the indictment, we vacate Stanley Mollica's judgment of conviction for conspiracy and remand for a new trial on this count.

As to Marie Cirillo, we vacate her judgment of conviction on the conspiracy count, and remand to the district court with instructions to dismiss the indictment as to her because of her death pending appeal. In addition, we dismiss the government's cross-appeal as moot because of the dismissal of the indictment as to Cirillo.