**UNITED STATES of America, Plaintiffs,**

**v.**

**Juan MOLINA, Luis Francisco Cortez, Jaime Luis Figueroa, Edwin Skerrett Melendez, Manuel Lopez, and Denithe Rodriquez, Defendants.**

**No. 91 CR 669.**

United States District Court, E.D. New York.

March 27, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Miriam R. Best, Asst. U.S. Atty., for U.S.

Jorge Guttlein, Aranda & Guttlein, New York City, for defendant Manuel Lopez.

Robert M. Baum, Legal Aid Society, Federal Defender Services Unit, Brooklyn, N.Y. by Michael P. Padden, for defendant Figueroa.

Murray Richman, Bronx, N.Y., for defendant Molina.

Lloyd Epstein, Epstein, Hus & Weil, New York City, for defendant Melendez.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

In the above-referenced prosecution, defendants are charged with, *inter alia*, narcotics-related offenses and attempting to interfere with the testimony of a witness in an official proceeding. More particularly, count one charges Juan Molina ("Molina"), Luis Francisco Cortez ("Cortez"), Jaime Luis Figueroa ("Figueroa"), and Edwin Skerrett Melendez ("Melendez"), with conspiracy to possess with intent to distribute

heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(i). Count two charges Molina, Cortez, Figueroa, and Melendez with attempt to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(i). Count three charges Cortez, Melendez, Manuel Lopez ("Lopez"), and Denithe Rodriguez ("Rodriguez") with attempting corruptly to prevent the testimony of a witness at an official proceeding in violation of 18 U.S.C. § 1512(b)(1). Count four charges Melendez with violating a condition of his bail, in violation of 18 U.S.C. § 3147.

Defendants currently seek various forms of pre-trial relief. Lopez moves for the following: severance of his trial; suppression of certain post-arrest statements; to compel discovery; and to dismiss the indictment based on outrageous government conduct. Figueroa moves for a severance pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. Both Molina and Melendez join in Lopez's motions for severance, discovery, and dismissal of the superseding indictment. Finally, Molina moves *pro se* for dismissal of the superseding indictment, apparently on the ground that he was entrapped. After a brief statement of the background facts, the Court will address the defendants' motions.

## BACKGROUND

According to the government, in May of 1991, Molina and Cortez began negotiating with a Chinese heroin supplier ("the supplier") in order to obtain a quantity of heroin. At the time, the supplier was cooperating with the FBI, and it is alleged that defendants' negotiations were monitored, recorded, and surveilled by the FBI. On the date of the planned exchange, Molina, Cortez, Figueroa, and Melendez were arrested in the Chinatown section of Manhattan after completion of the exchange. The following day, the four defendants were arraigned on a complaint, which complaint disclosed that the supplier was cooperating with the government and that the government had, in fact, monitored the transaction. Although each of the four defendants were

initially ordered detained, Melendez eventually was released on a bond.

The government asserts that some of the defendants thereafter devised a scheme to locate and kill the cooperating supplier. Since Melendez was the only one of the four arrested who was released pending trial, the plan allegedly was to use Melendez and certain family members of the detained defendants to find an assassin and locate the supplier. To that end, it is asserted that Molina's brother-in-law, defendant Lopez, approached an individual known as "Ritchie," whose girlfriend was acquainted with Cortez' wife, defendant Rodriguez. When Lopez ultimately explained to "Ritchie" the reason they were looking for the cooperating supplier, "Ritchie" notified the FBI.

On September 30, 1991, a meeting was arranged at which "Ritchie" introduced Lopez and Melendez to an undercover detective who was posing as a corrupt police officer. At one point during that meeting, Lopez explained the objective of the scheme, and Melendez provided a description of the supplier. That meeting was tape recorded, photographed and surveilled by the FBI. Although the undercover detective attempted to arrange additional meetings, Lopez refused. The FBI subsequently arrested Lopez and Rodriguez and re-arrested Melendez in connection with the scheme to locate the supplier. The government alleges that after their arrests, defendants were advised of their *Miranda* rights and given the opportunity to make statements.

## DISCUSSION

*Severance*

Lopez and Figueroa move for severances.[1] It is first argued that joinder of the defendants in this case is violative of Rule 8(b) of the Federal Rules of Criminal Procedure. Rule 8(b) provides that:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the

---

1. Molina and Melendez join in Lopez' motion to sever.

same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b); *see also United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991). In *Cervone,* the Second Circuit noted that in construing Rule 8(b) "joinder is proper where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" 907 F.2d at 341 (quoting *United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989)) (further citation omitted).

■ Figueroa argues that "[t]he new charges in the indictment [the obstruction charge] do not demonstrate any 'concert of action on the part of the defendants.'" Figueroa Memo. at 5 (citation omitted). However, two defendants are charged in both the narcotics-related counts as well as the obstruction count. Thus, there clearly is some substantial identity of participants regarding the narcotics conspiracy charge and the obstruction charge. Moreover, as the government argues, the obstruction charge was not a "random crime," but rather an attempt to prevent or interfere with the trial on the original heroin charges. To that extent, the obstruction charge arose out of the conspiracy to distribute heroin. Inasmuch as it is well-settled that all defendants need not be charged in all counts to justify joinder, *see e.g., Cervone,* 907 F.2d at 341 (upholding denial of severance under Rule 8(b) where movant was the only defendant charged in the two counts naming him within a 102–count indictment), this Court finds that the indictment is not violative of Rule 8(b), and therefore severance is not warranted on that basis. *See United States v. Guerrerio,* 670 F.Supp. 1215, 1223–24 (S.D.N.Y. 1987).

■ Defendants alternatively argue that severance is appropriate based on the potential prejudicial spillover created by a joint proceeding. Pursuant to Rule 14 of the Federal Rules of Criminal Procedure, a court may order separate trials where a defendant is "prejudiced by a joinder of offenses or of defendants in an indictment." Fed.R.Crim.P. 14. Such a motion is "'committed to the sound discretion of the trial judge.'" *United States v. Torres,* 901 F.2d 205, 230 (2d Cir.1990) (citations omitted); *United States v. Persico,* 621 F.Supp. 842, 852 (S.D.N.Y.1985). To justify a severance under Rule 14, a defendant must meet the substantial burden of showing that "'he would be so prejudiced by a joint trial that he would in effect be denied a constitutionally fair trial in a joint proceeding.'" *Persico,* 621 F.Supp. at 852 (quoting *United States v. King,* 49 F.R.D. 51, 53 (S.D.N.Y.1970)).

■ Generally, "the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multidefendant trials." *United States v. Cardascia,* 951 F.2d 474, 483 (2d Cir.1991) (citing *Richardson v. Marsh,* 481 U.S. 200, 209–210, 107 S.Ct. 1702, 1708–09, 95 L.Ed.2d 176 (1987)). In fact, the strong policy favoring joint trials acknowledges "the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." *Id.* It is to be noted that separate trials are not justified merely because some evidence offered will not be admissible against, or relevant to, another co-defendant, or because the defendants' roles in a conspiracy vary. *Persico,* 621 F.Supp. at 853 (citations omitted). An appropriate limiting instruction to the jury ordinarily suffices to protect the defendant as to whom the evidence is not being offered. *United States v. Carson,* 702 F.2d 351, 367 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983).

■ Turning to address defendants' arguments in favor of severances herein, the Court finds that neither Lopez nor Figueroa have met the requisite burden. Lopez' claim that evidence of the narcotics dealings would not be relevant, or admissible,

at a separate trial on the one obstruction count is unpersuasive. As the government points out, the jury in such a proceeding would have to receive evidence about the heroin transaction in order to understand why any defendant was looking for the supplier. Furthermore, the Court can instruct the jury to consider the guilt of each defendant, and each count of the superseding indictment, individually. *See e.g., Persico*, 621 F.Supp. at 853. In sum, Lopez' arguments in support of his motion for severance are without merit. Figueroa's argument that the potential spillover prejudice to him is heightened by the violent nature of the witness tampering count is similarly unavailing. Although the Second Circuit has recognized that "[r]elief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature," *Cardascia*, 951 F.2d at 483, it does not appear that any violence actually took place in the instant case. In light of that fact, the Court is convinced that a proper limiting instruction that the jury should not consider the evidence relating to witness tampering in determining Figueroa's guilt or innocence on the heroin charges will sufficiently protect against prejudicial spillover. Accordingly, the motions to sever are denied.

### Disclosure of Confidential Informant

Lopez moves for disclosure of certain information regarding "Ritchie," the government's confidential informant used during the investigation of this case. Among the details Lopez seeks to learn are "Ritchie's" full name, address, telephone number, occupation, history of employment—particularly if it was in law enforcement, and medical background. In the alternative, Lopez seeks to question "Ritchie" prior to trial.

A district court may direct disclosure of a confidential informant where the moving defendant makes " 'a *specific* showing that disclosure [is] both material to the preparation of [the] defense and

reasonable in light of the circumstances surrounding [the] case.' " *United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir.) (quoting *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975) (emphasis in original)), *cert. denied*, —— U.S. ——, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990). Lopez asserts that the information regarding "Ritchie" is material since Lopez apparently intends to offer evidence of an entrapment defense at trial.[2] The Court recognizes that in such a situation, the disclosure of information regarding a confidential informant who participated in a pre-arrest operation may be particularly appropriate. *See DiBlasio v. Keane*, 932 F.2d 1038, 1042–43 (2d Cir. 1991). However, in the case at bar the government argues that pre-trial disclosure of information about "Ritchie" is not required since the government will call "Ritchie" as a witness during its case-in-chief. To that end, the government states that it will provide information about "Ritchie" several days before trial, in accordance with its responsibilities under 18 U.S.C. § 3500 and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Given the circumstances of this case, the Court finds that pre-trial disclosure is not warranted. First of all, the fact that the government will call "Ritchie" as a witness at trial strongly militates against pre-trial disclosure in this instance. Indeed, the *DiBlasio* court noted that "if the government chooses and is able, it may physically produce the informant for testimony; in which case, depending on circumstances at trial, the trial judge may conclude that disclosure of his true identity or where he resides is not necessary." 932 F.2d at 1043. Secondly, in light of the fact that the crime about which "Ritchie" provided information was witness tampering, the government's claim that pre-trial disclosure could jeopardize the witness' safety is particularly persuasive. Accordingly, Lopez' motion to compel pre-trial disclosure of information regarding the government's confidential informant is denied.

**2.** In an affidavit, Lopez asserts that "the under-
cover and Ritchie were constantly pushing to

get me involved." Aff. of Manuel Lopez at ¶ 14.

*Dismissal of the Indictment for Outrageous Government Conduct*

█ Lopez moves for dismissal of the indictment based on the ground that government conduct involving the undercover officer and "Ritchie" during the course of the alleged witness tampering scheme violated Lopez' due process rights and amounted to outrageous government conduct. It is asserted that "the government went out of its way to create a criminal scheme to ensnare [Lopez]." Lopez Memo. in Support at 13. In opposition, the government contends that Lopez' motion actually represents an ordinary claim of entrapment.

The Second Circuit recently held that "to obtain dismissal of an indictment based upon a claim of outrageous government conduct, a defendant must establish that the government engaged in outrageous behavior in connection with the alleged criminal events and that due process considerations bar the government from prosecuting [him]." *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir.1991) (citing *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973)) (further citation omitted). Furthermore, "the existence of a due process violation must turn on whether the governmental conduct, standing alone, is so offensive that it 'shocks the conscience,' . . . regardless of the extent to which it led the defendant to commit his crime." *United States v. Chin*, 934 F.2d 393, 398 (2d Cir.1991) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Thus, "[t]here are significant differences between a claim of entrapment and a claim of outrageous governmental conduct." *Cuervelo*, 949 F.2d at 565.

The sole factual basis offered in support of Lopez' claim appears to be the transcripts of monitored meetings and telephone calls in which Lopez communicated with "Ritchie" or the undercover officer. To that extent, having reviewed the transcripts, the Court finds the claim of out-rageous government conduct to be without merit, and the motion, as made by Lopez and joined in by Melendez and Molina, is hereby denied.[3] However, defendants are hereby given leave to move again on this claim, if convicted, by way of a post-verdict motion. At that time this Court, having heard all the evidence in the case, could determine whether such an application would require a hearing, consistent with the Court's reasoning in *Cuervelo*. *See* 949 F.2d at 567.

*Suppression of Lopez' Post–Arrest Statements*

Lopez moves to suppress statements allegedly made by him following his arrest. Although Lopez indicates that he was advised of his *Miranda* rights, he nonetheless asserts that he was threatened and coerced into making the statements. The government consents to a hearing on this issue, and therefore the Court defers ruling on the suppression motion until the completion of a hearing.

### CONCLUSION

For the reasons stated above, defendants' motions for severances, dismissal of the indictment, and to compel disclosure of information about the government's confidential informant are denied. Finally, the Court defers ruling on Lopez' motion to suppress post-arrest statements until the completion of a hearing on that issue.

SO ORDERED.

---

**3.** To the extent that defendant Molina's *pro se* application raises the same claim, it is likewise summarily denied.