**UNITED STATES of America**

v.

**Ari Ben MENASHE, Joseph O'Toole, and Richard St. Francis, Defendants.**

**No. 90 Cr. 010 (LLS).**

United States District Court, S.D. New York.

Aug. 1, 1990.

---

Baruch Weiss, Asst. U.S. Atty., S.D. N.Y., New York City, for plaintiff.

Thomas F.X. Dunn, Golub and Dunn, New York City, for Ari Ben Menashe.

Joseph O'Toole, Claremont, Cal., pro se.

Lawrence Bader, Morvillo, Abramowitz & Grand, New York City, for Richard St. Francis.

## MEMORANDUM AND ORDER

STANTON, District Judge.

All defendants are charged (count one) with conspiring to sell American-made C–130 military cargo planes located in Israel to Iran, in violation of the Arms Export Control Act ("AECA"), 22 U.S.C. §§ 2751–2796d. Defendant Joseph O'Toole is also charged (count two) with conspiring with two unindicted co-conspirators to sell American-made anti-aircraft missiles located in Israel to an undisclosed country, in violation of AECA.

Defendant Richard St. Francis moves to dismiss the indictment on the ground that the government's conduct in developing the case against him was so unfair that it violated his constitutional right to due process. He also moves for a severance of count two of the indictment or for severance of his co-defendant Joseph O'Toole.[1] Defendant Ari Ben Menashe joins in St. Francis' motions. O'Toole also moves for severance of count one.[2]

---

1. Severance of O'Toole is not requested in St. Francis' notice of motion, but is suggested at page 28 of his memorandum of law in support of his motions.

2. O'Toole has made other pre-trial motions, which will be dealt with separately.

■ A motion to dismiss the indictment on the ground that the government's conduct in developing the case against the defendant was so unfair as to violate his due process rights will be granted only when the government's conduct was "so repugnant and excessive as to shock the conscience". *United States v. Romano,* 706 F.2d 370, 372 (2d Cir.1983); *see also, Hampton v. United States,* 425 U.S. 484, 495–96 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (1976) (Powell, J., concurring) ("Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction.") "Under these standards, to be sure, the instances in which the Government violates the constitutional guarantees 'will be exceedingly rare.'" *United States v. Evans,* 667 F.Supp. 974, 988 (S.D.N.Y.1987), *aff'd* 844 F.2d 36 (1988), quoting *United States v. Alexandro,* 675 F.2d 34, 35 (2d Cir.), *cert. denied,* 459 U.S. 835, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982).

St. Francis argues that the government violated his due process rights because it

targeted St. Francis without any reason to believe that he wanted to commit a crime; it then pursued him even after he repeatedly and clearly stated his intention to act lawfully; it misinformed him on the law, even though the crime at issue was one where ignorance of the law is a defense [3]; it did not discourage his belief that the proposed transaction would be approved at the highest levels of the United States Government; it encouraged him to think that obtaining a false end user certificate was the only "legitimate" way to complete this transaction; and it did not attempt to dissuade him from his belief that this "legitimate" way contemplated a false end user certificate being submitted to the Israeli Government (who would know it was

false) and not to the State Department (who would also know it was false).

St. Francis' memo in support, pp. 7–8.

■ These contentions do not, as the facts appear so far in this case, rise to such "repugnant and excessive" or outrageous conduct as to shock the conscience and require dismissal of the indictment.

■ That the government targeted St. Francis without any reason to believe he wanted to commit a crime is immaterial, since the Constitution does not require reasonable suspicion of wrongdoing before commencing an undercover investigation.[4] *United States v. Gamble,* 737 F.2d 853, 860 (10th Cir.1984); *see also United States v. Myers,* 635 F.2d 932, 941 (2d Cir.) (government need not have a reasonable suspicion of wrongdoing before offering a bribe to a public official), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Jenrette,* 744 F.2d 817, 823–24 & n. 13 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985) (same); *United States v. Jannotti,* 673 F.2d 578 (3rd Cir.) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (same).

That the government allegedly pursued St. Francis after he repeatedly told Lisica (an undercover agent) that he wanted to engage in a lawful transaction does not warrant dismissal of the indictment.[5] While St. Francis may succeed in an entrapment defense, *see Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212–13, 77 L.Ed. 413 (1932) (entrapment defense made out when the activities of the government agent implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission), that defense is one for a properly instructed jury. *United States v. Sherman,* 356

---

**3.** *See United States v. Golitschek,* 808 F.2d 195, 203 & n. 3 (2d Cir.1986) (defendant charged with conspiring to sell weapons to Iran; government must show that defendant had knowledge of the requirements concerning end-user documents).

**4.** Moreover, the illegal transfer of military equipment from one foreign country to another

is "precisely that type of elusive, difficult to detect, covert crime which may justify Government infiltration and undercover activities." *Alexandro,* 675 F.2d at 42 (footnote omitted).

**5.** The government questions the credibility of those statements, since St. Francis told Lisica that he feared that his phone was being tapped as part of an undercover operation.

U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958).

The remainder of St. Francis' contentions are based on his assertions that the government agent in charge of the undercover operation was unclear about the terms of the illegal proposal, and allowed him to believe the United States Government favored the sale.

Here, a jury could find to the contrary. Moreover, a jury could also conclude from St. Francis' statements that he was willing to engage in an illegal transaction, and that he did not believe that the United States Government approved of the transaction. In such a situation, the government's conduct does not violate the defendant's due process rights. *United States v. Williams*, 705 F.2d 603, 621 (2d Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983).

Thus, this case is not one of the "exceedingly rare" ones, *Alexandro*, 675 F.2d at 35, where dismissal of the indictment is required. Accordingly, the motions to dismiss the indictment are denied.

With respect to the joinder of counts one and two, the government argues that joinder was proper because the "events underlying the two counts were part of a series of acts that shared a common purpose, i.e., they were part of a common scheme or plan on the part of O'Toole to engage in multi-million dollar deals aimed at enriching himself by illegally transferring American-made arms located in Israel to a prohibited recipient or end user". (Government's memo in opposition, pp. 38–39). It cites *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989) (joinder of defendants charged in multiple counts is proper if defendants engaged in a series of acts that arise out of a common plan or scheme).

■ Here, as far as count two is concerned, O'Toole's plan cannot be called "common", since he is the only one alleged to be aware of it. *See Webster's Ninth New Collegiate Dictionary* 265 (1985) (defining common as "belonging to or shared by two or more individuals or by all members of a group"). Because there is no allegation in the indictment or offer of proof[6] that St. Francis or Ben Menashe were aware of or joined in O'Toole's plan, joinder of count two in the indictment is improper. *See United States v. Castro*, 829 F.2d 1038 (11th Cir.1987) (evidence at trial showed two conspiracies with overlapping memberships; defendant involved in only one of them was improperly joined with co-defendants involved in the other, where evidence at trial did not establish a common objective among the conspirators); *see also United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).[7]

Accordingly, defendants' motions to sever count two are granted.

■ Both St. Francis and the government suggest that if count two is severed, then O'Toole should be severed and tried on the two conspiracy charges separately. The government argues that even if count two is severed, the evidence with respect to it will be admissible against O'Toole at the trial of count one under Fed.R.Evid. 404(b). Thus, the government claims that count two will, in effect, be tried twice. St. Francis argues that he "is charged with conspiring to sell old cargo planes, hardly an in-

---

**6.** The government admits that the alleged common scheme does not appear on the face of the indictment, but argues that it need not be charged on the face of the indictment. However, there is a split in authority whether the propriety of joinder must be determined from the face of the indictment. *See United States v. Moon*, No. 88 Cr. 64, 1988 WL 88056 (N.D.N.Y. Aug. 22, 1988) [1988 U.S.Dist.Lexis 9306] (citing cases). The Second Circuit has not yet decided the issue, and the District Courts in the Second Circuit are in disagreement. *Compare Moon, supra,* (propriety of joinder to be determined on face of indictment) *with United States v. Florio*, 315 F.Supp. 795, 797 (E.D.N.Y.1970) (propriety of joinder can be proven by bill of particulars). The question need not be decided here, since joinder is improper even after considering materials outside the indictment.

**7.** The government's reliance on *Attanasio* is misplaced. Joinder of defendants in *Attanasio* was justified because the indictment alleged, and the evidence showed, that the two conspiracies shared a common purpose and there was a significant factual overlap between them.

flammatory act", and that, accordingly, he would be prejudiced by the introduction of evidence concerning the stinger missiles involved in count two, which are "serious military weaponry" used to shoot down aircraft. (St. Francis' reply memo, p. 16).

Those arguments are meritorious, since there is a substantial likelihood that evidence with respect to count two would be admissible against O'Toole in the trial of count one. Thus, it is necessary to sever O'Toole from the indictment to avoid wasting judicial resources and undue prejudice to St. Francis and Ben Menashe.

Accordingly, the motion to dismiss the indictment is denied, and the motions to sever count two, and count one insofar as it includes O'Toole as a defendant, are granted. Thus, Mr. O'Toole will be tried separately, on counts one and two, from the trial of Messrs. St. Francis and Ben Menashe on count one.