**UNITED STATES of America,**

v.

Isaac REINHOLD, Josef Goldstein, a/k/a "Yossie Goldstein," a/k/a "Joseph Goldstein," Irving Goldstein, Michael Mendlovic, Herbert Greenfield, United Talmudic Academy of Boro Park, Defendants.

No. (S2)97 Cr. 686(AGS).

United States District Court,
S.D. New York.

Feb. 6, 1998.

Jeremy Temkin, Teresa Pesce, Asst. U.S. Attys., U.S. Dept. of Justice, New York City, for U.S.

Gerald Shargel, New York City, for Irving Goldstein.

Jay Goldberg, P.C., New York City, for United Talmudic Academy.

Frederick D. Hafetz, Goldman & Hafetz, New York City, for Michael Mendlovic.

Elkan Abramowitz, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for Josef Goldstein.

Albert James Brackley, Brooklyn, NY, for Isaac Reinhold.

Roger Bennet Adler, P.C., New York City, for Herbert Greenfield.

*AMENDED OPINION and ORDER*

SCHWARTZ, District Judge.

Before the Court are defendants' motions (i) to sever pursuant to Rule 8(b) and Rule 14 of the Federal Rules of Criminal Procedure (Fed.R.Crim.P.); (ii) to dismiss the Second Superseding Indictment ("SSI") for improper joinder and for prosecutorial misuse of the grand jury; and (iii) for the Government to provide a bill of particulars and *Brady* material. For the reasons stated, these motions are denied.

**Factual Background**

The following are the pertinent facts alleged in the indictment.

Defendant Irving Goldstein and his wife owned and operated 47th Street Photo ("47th Street"), a large discount retail electronics concern with several stores in the metropolitan New York area. In the mid–1980s, allegedly as a result of difficulty securing distribution contracts with certain manufacturers, Irving Goldstein opened two new retail computer businesses, Advanced Computer Corp. ("Advanced") and Microland, Inc. ("Microland") and concealed his control of these companies by placing ownership in the hands of nominees. In 1988, he installed defendant Isaac Reinhold as President of both Advanced and Microland and in 1989 "sold" both companies to Reinhold in a sham transaction. In 1991, Advanced and Microland were merged into Micro Innovation Computer Center ("Micro"), an entity nominally owned by Reinhold, but actually controlled by Irving Goldstein and operated for the benefit of 47th Street. In similar fashion, Irving Goldstein also operated Maxum Computer Systems ("Maxum") as a subsidiary of 47th Street.

In January 1992, 47th Street filed for bankruptcy. In connection with the bankruptcy proceedings, Irving Goldstein repeatedly denied that he or 47th Street owned Micro or Maxum. He also provided creditors with documents purporting to reflect the sale of Maxum to a 47th Street Photo employee in 1990.[1] In the bankruptcy proceeding, Reinhold filed a $2.4 million claim on behalf of Micro against 47th Street, rendering Micro 47th Street's largest creditor. Reinhold withdrew this claim when it was challenged by another litigant in the bankruptcy proceeding.

By 1994, as a result of 47th Street's bankruptcy, Micro faced financial difficulties and turned to Fidelity Funding of California ("Fidelity"), a Texas asset-based lender. In order to induce Fidelity to enter into a financing agreement, Micro provided Fidelity with information purportedly listing its accounts receivable and outstanding invoices. Among the account debtors Micro listed was Masel Supply Company ("Masel"), a photographic supply company located in Brooklyn, New York, owned in part by defendant Michael

1. This employee subsequently signed documents purporting to "sell" Maxum to Reinhold and, by 1994, Maxum was operated together with Micro.

Mendlovic, Irving Goldstein's brother-in-law. When contacted by Fidelity representatives seeking to verify Micro's accounts receivable, Mendlovic falsely represented that the invoices listed by Micro were legitimate and would be paid. In January 1995, in reliance on information provided by Micro and confirmed by Mendlovic, Fidelity agreed to purchase up to $6.25 million of accounts receivable and to advance Micro 80 percent of the face value of those receivables (approximately $5 million). At approximately the same time, several of the defendants met and agreed to raise additional money for Micro by submitting fraudulent invoices to Fidelity. From January 1995 until July 1995, when the scheme collapsed, Micro sought additional funds from Fidelity almost daily, with the largest of these requests predicated on fraudulent invoices.

As an essential part of the scheme, Irving Goldstein and his son, defendant Josef Goldstein (who by 1994 had become an executive at Micro), enlisted the aid of various entities to pose as account debtors of Micro. These included, among others, defendant Mendlovic's company, Masel, defendant Herbert Greenfield's [2] company, Thrifty Cosmetics and Sundries, Inc. ("Thrifty"), and defendant United Talmudic Academy of Boro Park ("UTA"), a yeshiva that the Government alleges had "close ties to Irving Goldstein." In their assumed roles as Micro "debtors," these entities (1) falsely represented to Fidelity that Micro's phony invoices were issued in connection with real transactions and (2) "paid" a small portion of the invoices purchased by Fidelity with funds provided by Micro to maintain the illusion that the debts were legitimate. At the time Fidelity discovered the fraud in July 1995, it had advanced to Micro in excess of $2 million based upon open invoices addressed to Masel, UTA and Thrifty.

## Procedural Background

The defendants in this case were indicted on July 15, 1997 for conspiracy to commit wire fraud. Defendant Reinhold was additionally charged with five substantive counts of wire fraud. On September 23, 1997, the Grand Jury returned a superseding indict-

ment ("FSI") which also charged defendants Irving Goldstein and Reinhold with conspiracy to commit bankruptcy fraud and Irving Goldstein with two substantive counts of bankruptcy fraud. On November 21, 1997, the defendants filed various motions, including a motion to dismiss Count One of the FSI on the grounds that it improperly charged multiple conspiracies in a single count. In response to the defendants' motion to dismiss Count One, the government returned to the Grand Jury and sought a Second Superseding Indictment. As a result, on December 16, 1997, the Grand Jury returned the SSI.

Count One of the SSI charges defendants Reinhold, Josef Goldstein and Irving Goldstein with conspiracy to commit wire fraud in connection with Micro's alleged fraud against Fidelity. Counts Two to Four charge Mendlovic, Greenfield and UTA with separate conspiracies to commit wire fraud in connection with their involvement in the Fidelity scheme. Counts Five to Eight charge Reinhold and Mendlovic with acts of wire fraud arising out of the submission of fraudulent Masel invoices and the transmission of funds used in connection with payment of certain past due invoices. Counts Nine through Twelve charge Reinhold, Josef Goldstein, and Greenfield with acts of wire fraud arising out of the submission of fraudulent Thrifty invoices and the transmission of funds used in connection with payment of certain past due invoices. Counts Thirteen through Seventeen charge Reinhold, Josef Goldstein, Irving Goldstein and the UTA with acts of wire fraud arising out of the submission of fraudulent UTA invoices and the transmission of funds used in connection with payment of certain past due invoices. Count Eighteen charges Irving Goldstein and Reinhold with conspiracy to commit bankruptcy fraud in connection with 47th Street's bankruptcy. Counts Nineteen and Twenty charge Irving Goldstein with two substantive counts of bankruptcy fraud in connection with 47th Street's bankruptcy.

The defendants have filed motions seeking various forms of relief. All defendants, except for Reinhold, have moved pursuant to

---

2. Greenfield is Irving Goldstein's brother-in-law.

Fed.R.Crim.P. 8(b) to sever counts eighteen to twenty of the SSI (counts seven to nine of the FSI) on the grounds that the bankruptcy fraud and wire fraud charges do not constitute a common plan or scheme and that the two sets of charges are linked only by the existence of two common defendants, Irving Goldstein and Reinhold. Mendlovic, Josef Goldstein and UTA move to sever the bankruptcy counts of the SSI pursuant to Fed.R.Crim.P. 14 on the grounds that evidence of the bankruptcy fraud charges will prejudice the defendants' ability to defend against the wire fraud charges. Mendlovic, Josef Goldstein and UTA move pursuant to Fed.R.Crim.P. 14 to sever their cases from the case against Reinhold on the grounds that inculpatory statements by Reinhold are inadmissible against the other defendants and cannot be redacted to prevent any danger of prejudicial spillover. Mendlovic, Josef Goldstein, UTA and Greenfield move pursuant to Fed.R.Crim.P. 8(b) to sever all counts on the grounds that the defendants were not all aware of, and did not all join in, all of the schemes alleged. Mendlovic, Josef Goldstein, UTA, Greenfield and Reinhold move pursuant to Fed.R.Crim.P. 14 to sever all counts on the grounds that a joint trial will result in prejudicial spillover and, according to Greenfield and Reinhold, will involve the presentation of antagonistic defenses. Mendlovic, Josef Goldstein, Greenfield and Reinhold move for a bill of particulars. Josef Goldstein, Mendlovic and UTA move to dismiss the SSI on the grounds that the government misused the grand jury for purposes of trial preparation, and Greenfield moves for production of *Brady* material.

### Discussion

#### I. Motions to Sever and to Dismiss for Improper Joinder

The threshold question on the motions to sever and for dismissal for improper joinder is whether the SSI adequately alleges that the defendants were all part of a common scheme or plan to aid Irving Goldstein by defrauding Fidelity and 47th Street's bankruptcy creditors.

**Applicable Law**

Rule 8(a), which permits joinder of unrelated offenses of a similar character against a single defendant, provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 8(b) addresses joinder of multiple defendants and requires more than the mere existence of similarities between some of the actors or crimes. It provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants may not be charged in each count.

Where, as here, joinder involves both multiple offenses and multiple defendants, the standards of Rule 8(b) must be applied. *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir.1989). Accordingly, joinder of defendants and counts is proper where the criminal acts of two or more persons (1) arise out of a common plan or scheme or (2) are unified by some substantial identity of facts or participants. *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y.1995). As a general rule, these requirements are satisfied where the Government alleges the existence of an overall conspiracy linking the various substantive crimes charged in an indictment. *Id.*

Fed.R.Crim.P. 14 addresses the danger of prejudicial "spillover" resulting from improper joinder. It provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a sever-

ance of defendants or provide whatever other relief justice requires.

Consideration of the propriety of joinder in a conspiracy inevitably begins with reference to principles reviewed in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In *Kotteakos*, the Supreme Court held that a classic "wheel" conspiracy requires a common scheme to close the wheel among the various "spokes" of the conspiracy—the conspiracy is not properly alleged if the various "spoke" conspirators are joined only by the existence of a common "hub." Thus, the Supreme Court held that the Government may not "string together, for common trial, eight or more separate and distinct crimes ... when the only nexus among them lies in the fact that one man participated in all." *Id.* at 773.

■ For reasons of judicial economy and efficiency, joint trials are heavily favored; severances are disfavored. As the Second Circuit has noted, "the burden on a defendant to establish that severance was improperly denied is not an easy one to carry. The defendant must establish prejudice so great as to deny him a fair trial." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir.1991). In *Cardascia*, the court stated:

> The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted. Acknowledged in this policy is the inevitable tolerance of some slight prejudice to co-defendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials. Further, the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multi-defendant trials.

*Id.*

### The Alleged Common Scheme

The defendants argue that joinder in a conspiracy case requires an allegation of a common scheme, not just a common purpose. However, a scheme is to a large extent de-

fined by its purpose, and the existence of a common purpose suggests a common scheme. The SSI does not allege a conspiracy in which disparate and unconnected "spokes" used a single hub to further their own individual interests, as in *Kotteakos*. Rather, it alleges that the defendants acted with the common purpose of keeping Micro, alleged to be Irving Goldstein's business, afloat. Indeed, it was to this end that Irving Goldstein is alleged to have created Micro; it was to this end that Irving Goldstein and Reinhold are alleged to have concealed Irving Goldstein's ownership of Micro; and it was to this end that Josef Goldstein, Mendlovic, Greenfield and UTA are alleged to have falsely posed as debtors of Micro. These allegations are sufficient to support joinder of the defendants.

The case of *United States v. Attanasio*, 870 F.2d 809 (2d Cir.1989) is on point. In *Attanasio*, six defendants were tried for two distinct conspiracies to impede the Internal Revenue Service in the collection of income taxes. The first conspiracy involved a scheme by two defendants to launder illegally derived monies by reporting them as salary for jobs which the defendants did not hold. The second conspiracy involved a scheme to launder money by reporting fraudulent transactions on the joint tax returns of two of the defendants in successive years. Although only one defendant, Louis Attanasio, was involved in both conspiracies, the Second Circuit held joinder proper because "[t]he transactions alleged in both conspiracy counts were a part of a series of acts that shared a common purpose: to conceal and launder Louis Attanasio's income...." *Id.* at 815.

■ The allegations in the indictment are also sufficient to support joinder of the counts relating to the bankruptcy fraud against the defendants who are alleged only to have participated in the Fidelity fraud. The purpose common to the scheme charged in both frauds, as stated above, was to preserve Micro for the benefit of Irving Goldstein. In *United States v. Weisman*, 624 F.2d 1118 (2d Cir.1980), multiple defendants were charged with various counts of violating RICO, securities fraud and bankruptcy fraud

arising out of the creation, operation and bankruptcy of the Westchester Premier Theater. The securities fraud charges arose out of various fraudulent practices in connection with the public offering of stock in the theater. The bankruptcy fraud charges arose out of secret skimming of the theater's profits after the theater went into bankruptcy approximately three years after the public offering. One defendant, Cannatella, was involved only in the bankruptcy fraud and appealed his conviction on the grounds that he suffered prejudicial spillover from the securities fraud charges. The Second Circuit agreed that Cannatella may have had a better chance of acquittal had his trial been severed. However, it upheld his conviction and found that the risk of prejudicial spillover was insubstantial given that there was little overlap between the evidence of securities fraud and the evidence of bankruptcy fraud, and that the trial court had repeatedly admonished the jury to evaluate the offenses charged and the evidence against each defendant separately. *Id.* at 1129–1130. So, too, in this case, appropriate limiting instructions can minimize the risk of any prejudicial spillover resulting from joinder of the bankruptcy fraud counts.

Similarly, in *United States v. Cardascia,* 951 F.2d 474 (2d Cir.1991), the Second Circuit held that joinder of defendants and counts arising out of two different conspiracies was proper even though two of the defendants were not alleged to have participated in one of the schemes and "may have suffered some prejudice when they were forced to sit before the jury for over a month without any evidence being introduced concerning their activities." *Id.* at 483. The court also noted that "a disproportionate introduction of evidence relating to joined defendants does not require a severance in every case" because "disparity in the quantity of evidence and of the proof of culpability are inevitable in any multi-defendant trial...." *Id.* Finally, the court noted that severance "may be more appropriate when the unrelated evidence reflects activities of a violent nature...." *Id. See also United States v. Turoff,* 853 F.2d 1037, 1044 (2d Cir.1988) (joinder of three defendants in two distinct schemes appropriate where both schemes in-

volved the same credit union and "the proof of one scheme [was] indispensable for a full understanding of the other.")

In opposition to the Second Circuit authority favoring joinder under circumstances similar to those in this case, defendants rely on several district court cases distinguishing *Attanasio* and holding joinder of distinct conspiracies to be inappropriate. However, these cases, each of which is fact specific, do not provide sufficient authority to overcome the strong presumption in favor of joint trials. In *United States v. Menashe,* 741 F.Supp. 1135, 1138 (S.D.N.Y.1990) joinder of two conspiracies was held improper because there was no allegation linking two of three defendants to one of the conspiracies and, therefore, no allegation that the conspiracies shared a common purpose. Similarly, in *United States v. Kouzmine,* 921 F.Supp. 1131, 1133 (S.D.N.Y.1996) joinder of two distinct conspiracies was held improper where the indictment alleged that the defendants had had a "falling out" among themselves and that there was, therefore, "no colorable argument" that the two conspiracies "were part of a single overarching scheme." In *United States v. Lech,* 161 F.R.D. 255, 256–57 (S.D.N.Y.1995) joinder of three distinct conspiracies was held improper because the defendant challenging the joinder concededly engaged in only one of the schemes and had little or no knowledge of the other conspiracies. In *United States v. Giraldo,* 859 F.Supp. 52, 54 (E.D.N.Y.1994), joinder of two distinct drug conspiracies was held improper because they were linked only by one common defendant and one common undercover customer, and did not share a common purpose. Finally, in *United States v. Reale,* 1997 WL 580778 at *11 (S.D.N.Y. Sept.17, 1997), joinder was held improper because the court found that the distinct conspiracies charged "did not share a common aim" and that severance would promote "judicial efficiency."

In contrast to all of these cases, the SSI makes clear that all defendants shared the common goal of keeping Micro afloat and that both the bankruptcy fraud and the Fidelity fraud were undertaken with this goal in mind. It is the presence of a common

plan or scheme, a common aim or goal, not whether each defendant knows of the acts or roles of each other, or of others, that controls. Although courts have, on occasion, referred to the parties' knowledge or lack thereof, the cited cases make clear that it is the participation in the same acts or transactions, or series of acts or transactions, in a common scheme or plan, that is, with a common purpose, that will determine the propriety of joinder of offenses and parties. It is not significant that a conspirator may not know of the participation or self-interest of other conspirators. It is sufficient each defendant have participated in the conspiracy with the common goal or purpose of the other defendants.

Defendants refer the Court to the recent decision in the parallel civil case, *Fidelity Funding of California, Inc. v. Reinhold,* 95 Cv 3130(ARR) (E.D.N.Y. Oct. 22, 1997). In that case, Judge Ross denied Fidelity's motion for summary judgment on the issue of whether the defendants (who include all of the defendants in this case) could be held jointly and severally liable for the total amount of Fidelity's loss resulting from the Micro fraud. In denying summary judgment, Judge Ross found that Fidelity had not made a "sufficient evidentiary showing" to permit the court "at this stage in the proceedings" to impose joint and several liability. (Slip Op. at 24). She did not find as a matter of law that the defendants did not share a common aim for purposes of joinder in a criminal case. Moreover, the Government was not a party to the civil action and, concededly, has more power than Fidelity to collect and present evidence of the defendants' criminal scheme. Further, the Government has represented that its evidence will be different from that offered by Fidelity in support of its motion for summary judgment. Consequently, Fidelity's evidentiary

failings in the civil case cannot be deemed chargeable against the Government in the criminal case.

Mendlovic, Josef Goldstein and UTA have also moved for severance pursuant to Bruton v. *United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). These defendants contend that certain statements made by Reinhold to a Fidelity representative, after the scheme had collapsed, are inadmissible against them and that potential damage cannot be cured by redaction. These statements, allegedly made by Reinhold as part of an attempt to keep the scheme alive, are admissible against all of the other defendants as statements of a co-conspirator and do not provide a sufficient basis for a severance on *Bruton* grounds. Greenfield and Reinhold have also moved for severance on the grounds that they will present antagonistic defenses at trial. These motions are denied as the defendants have not made any showing that they have what may be characterized as clearly antagonistic defenses at trial.[3]

## II. Motions for Bill of Particulars

■ Defendants move, pursuant to Fed. R.Crim.P. 7(f), to compel the Government to produce a bill of particulars. Defendants primarily seek identification of alleged co-conspirators who have not been named in the Indictment. We note at the outset that the decision whether to grant or deny a bill of particulars is within the sound discretion of the district court. *See United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984).

In support of their claim that they are entitled to the names of all alleged co-conspirators, defendants cite three district court cases in which the court ordered the Government to produce such names. In two of these cases, *United States v. Allocco,* 801

---

3. In support of his pre-trial motions, defendant Greenfield has attached a copy of an alleged loan agreement between himself and Josef Goldstein. The agreement makes no reference to Micro or to the transactions referred to in the indictment. Accordingly, it does not, in and of itself, raise the spectre of antagonistic defenses. In the absence of amplification, defendant Greenfield has failed to provide sufficient evidence of any antagonistic defense between himself and the other defendants. Issues with respect to any defense that

Greenfield may present regarding the alleged loan agreement, and any transactions pursuant thereto, are for the jury to determine. Parenthetically, the affidavit of Greenfield's counsel identifies the alleged loan agreement as "Exhibit J." The exhibits attached to the affidavit do not include an "Exhibit J." In fact, an alleged loan agreement is appended as "Exhibit I." Elsewhere in the affidavit, "Exhibit I" is identified as a series of letters sent by Fidelity to Micro's account debtors.

F.Supp. 1000, 1003 (E.D.N.Y.1992), and *United States v. Chovanec,* 467 F.Supp. 41, 45 (S.D.N.Y.1979), the court provided little or no explanation or rationale for its decision. The third case, *United States v. Rogers,* 617 F.Supp. 1024, 1028 (D.Colo.1985), held that not revealing the names of co-conspirators will lead to prejudicial surprise. This holding has been criticized by at least one Court of Appeals as overly broad, *see United States v. Hughes,* 817 F.2d 268, 272 (5th Cir.1987), and, in any event, goes beyond the law of this circuit, as we discuss more fully below.

Defendants also call to the Court's attention two Second Circuit decisions reversing convictions on the grounds that a bill of particulars was improperly denied. Neither of these is relevant to the case at bar. In *United States v. Davidoff,* 845 F.2d 1151 (2d Cir.1988), the defendant was charged with extortion directed at one particular company, but at trial was surprised with evidence of extortion of three entirely different companies. In *United States v. Bortnovsky,* 820 F.2d 572 (2d Cir.1987), an insurance fraud case, the Court found that the defense had been impermissibly hindered by the Government's failure to identify which of a series of burglaries were allegedly fake, and which of 4,000 documents were allegedly fraudulent. Here, rather than surprising or hindering the defendants, the Government has provided a detailed indictment and extensive discovery.

■ The leading case in this Circuit involving a bill of particulars regarding unindicted co-conspirators is *United States v. Torres,* 901 F.2d 205 (2d Cir.1990). In that case, the court found that the district court had not abused its discretion in denying a bill of particulars seeking much the same information as is sought in the case at bar. "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Id.* at 234 (quoting *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987)). The Court also offered the following standard of review: "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of partic-

ulars, the trial court has not abused its discretion." *Id.* (quoting *United States v. Maull,* 806 F.2d 1340, 1345–46 (8th Cir. 1986)).

At least three cases in this district are directly on point, and each, citing *Torres,* denied a bill of particulars. *See United States v. Muyet,* 945 F.Supp. 586, 599 (S.D.N.Y.1996) ("The defendants are not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the . . . conspiracy."); *United States v. Jimenez,* 824 F.Supp. 351, 363 (S.D.N.Y.1993) (stating that pre-trial motions for "whens," "wheres," and "with whoms" are routinely denied); *United States v. Gambino,* 1995 WL 453318, *6 (S.D.N.Y. Aug.1, 1995) (no bill of particular required where defendants have been told "the dates and places of the offenses alleged in the indictment, the nature of these offenses, and the basic legal theory under which the Government contends that the defendants are criminally liable.")

■ The present indictment is detailed in its allegations. Moreover, defendants have had extensive discovery both in this case and in the related civil case. *See Fidelity Funding of Cal., Inc. v. Reinhold,* No. 95–cv–3130 (ARR) (E.D.N.Y. Oct. 22, 1997). The Court finds that there is no danger that, absent a bill of particulars, the defendants will be unfairly surprised at trial. Defendants' motions for a bill of particulars are denied.

### III. Motions to Dismiss the SSI for Misuse of the Grand Jury

■ Defendants move to dismiss the present Indictment on the grounds that the Government improperly used the Grand Jury to prepare for trial. There is no question that it is "improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment." *United States v. Leung,* 40 F.3d 577, 581 (2d Cir.1994). We must, therefore, determine what exactly it is that the Government did, and whether such actions were in impermissible preparation for trial.

In his supporting affidavit dated January 12, 1998, counsel for Josef Goldstein stated, upon information and belief, that, in the

guise of seeking the SSI, the Government had subpoenaed new witnesses in order to prepare for trial. (Abramowitz Supp. Aff. ¶ 4.) In response to affidavits from the two Government attorneys, stating that no subpoenas had been issued (Pesce Aff. ¶ 2; Temkin Aff. ¶ 2), defense counsel submitted a second *Supporting Affidavit*, dated January 26, 1998, stating that he had been "mistaken" in the earlier affidavit (Abramowitz 2d Supp. Aff. ¶ 3), and that he now believed that a Government agent had testified before the Grand Jury (*id.* at ¶ 4).

 At oral argument before this Court on February 3, 1998, attorneys for the Government stated on the record that in support of the SSI, only the FBI case agent had appeared before the Grand Jury. Defense counsel asserted that there had been no legitimate need for the agent's testimony, and speculated that a primary reason for having the agent appear in front of the Grand Jury was to give him the opportunity to testify before a "live audience" (i.e., to prepare him for trial). The Court is satisfied that the Government engaged in no improper conduct and that, in any event, defendants incurred no cognizable prejudice as a result of the agent's appearance before the Grand Jury. Defendants' motions are denied.

### IV. Motion for Production of *Brady* Material

■ Finally, defendant Greenfield moves pursuant to Fed.R.Crim.P. 16 for production of all *Brady* material. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court finds, preliminarily, that the materials to which counsel for Greenfield referred on oral argument (regarding the background and actions of a former employee of Micro) are not *Brady* material in that they are not exculpatory. Second, as to *Brady* material in general, the Assistant United States Attorney stated on the record that the Government has turned all such material over to defendants, and that it will continue to honor its obligation to furnish such material, should any such material surface in the future. Defendant Greenfield's motion is, therefore, denied as moot.

In sum, the Court finds that all parties and counts are properly joined under Fed. R.Crim.P. 8(b) and 14; that a bill of particulars is not warranted; that the Government did not misuse the Grand Jury; and that the Government is in compliance with its *Brady* obligations. We therefore deny all of defendants' motions.

SO ORDERED.