UNITED STATES of America

v.

Harrison BROWN, Allahvell Cutts, Henry Franklin, Malik Saunders, Rasheem Lee, John Sutton, Raheam Steed, Caleb Hooker, and Wajeeh Baker, Defendants.

No. 09 CR 168(CM).

United States District Court, S.D. New York.

Dec. 18, 2009.

Marissa Bea Mole, United States Attorney, Department of Justice, New York, NY, for Plaintiff.

## DECISION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS

McMAHON, District Judge:

On February 24, 2009, a federal grand jury in this District returned and Filed Indictment 09 Cr. 168(CM) against defendants Harrison Brown, Allahvell Cutts, Henry Franklin, Malik Saunders, Rasheem Lee, John Sutton, Raheam Steed, Caleb Hooker, and Wajeeh Baker. Each defendant is named in at least one of the four charged narcotics distribution conspiracies, as well as in at least one of the thirteen substantive narcotics distribution counts arising out of the defendants' participation in sales of cocaine base, commonly known as "crack," and powder cocaine to undercover officers on thirteen different occasions in 2007 and 2008.

Defendants Harrison Brown, Allahvell Cutts, Henry Franklin, Malik Saunders, Rasheem Lee, Raheam Steed and Caleb Hooker have each filed motions asking the Court to rule that the individual defendants are improperly joined in the current indictment and that severance is warranted under Federal Rule of Criminal Procedure 8(b) and/or 14. Defendant Cutts also seeks suppression of various forms of evidence that was obtained from his residence or telephones pursuant to search warrants, suppression of statements made by him following arrest, and early disclosure of *Brady* and *Giglio* material related to witnesses in the case.[1]

The Government opposes all of the defendants' motions, except for defendant-Cutt's motion to suppress his post arrest statements

### Defendants' Severance Motions

Each moving defendant argues that he should not be tried jointly with some or all of his codefendants. Each defendant asks that his case be severed from the other defendants.

Offenses and defendants are properly joined under Rule 8(b) where the criminal acts of two or more persons are " 'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.' " *United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989); Fed. R.Crim.P. 8(b). Rule 14 of the Federal Rules of Criminal Procedure permits severance in certain circumstances:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or

---

1. Defendants John Sutton and Wajeeh Baker remain fugitives. Accordingly, no motions have been submitted by them or on their behalf.

provide any other relief that justice requires.

Fed.R.Crim.P. 14(a).

■ A defendant seeking severance must show that he would be so prejudiced by joinder that he would be denied a fair trial. *United States v. Casamento,* 887 F.2d 1141, 1149 (2d Cir.1989). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 539, 113 S.Ct. 933 (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)); *see also United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir.2003).

The presumption in favor of joint trials "is particularly strong where the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998). With respect to participants in the same charged conspiracy, any claim of "prejudicial spillover" does not justify severance because the evidence would be admissible at a separate trial of the moving defendant. Rather, undue "prejudice" may occur "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper. This is an unlikely occurrence when all the defendants are charged under the same conspir-

acy count." *Salameh,* 152 F.3d at 115 (citation omitted).

■ Although the defendants in the present case are not all named together in each of the conspiracies, the Government represents that the evidence at trial will demonstrate that the defendants are " 'unified by some substantial identity of facts or participants and a common plan.' " *See Feyrer,* 333 F.3d at 114 (quoting *United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989)). According to the Government, the evidence will show that each of the drug distribution operations that serve as the basis for the conspiracy charges in Counts One through Four is linked to Cutts or Brown or in the case of Count One, both Cutts and Brown—as suppliers and/or direct participants in the charged drug distribution conspiracies. Counts One, Three, and Four of the Indictment explicitly make this connection by listing Cutts, Brown, or both as members of the particular conspiracies charged. Each of the charges alleges that the defendants engaged in extremely similar conduct— sales of crack and/or powder cocaine at locations that are within close proximity to each other in the Bronx. In these circumstances, the parties and alleged acts are sufficiently linked to support joinder of each of the defendants under Rule 8(b).

In *United States v. Halliman,* 923 F.2d 873, 883 (D.C.Cir.1991), the D.C. Circuit found that two defendants who were charged with crack and cocaine sales in separate counts of an indictment were nonetheless properly joined under Rule 8(b). The Circuit Court held that the trial court properly relied on the Government's proffer of the connections between the two defendants that it expected to show at trial in support of its pretrial ruling that joinder was proper. *Id.; see also United States v.*

*De Yian,* 94 Cr. 719(DLC), 1995 WL 368445, at *10 (S.D.N.Y. June 21, 1995).[2]

Any danger of spillover prejudice can be remedied by instructing the jury that they must consider the guilt of each defendant individually—an instruction that jurors are presumed to be able to follow. *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.1984). The defendants are charged with distinct, separate acts which the jury should easily be able to segregate as to each defendant. There is simply no reason to believe that a properly instructed jury will be unable to segregate the proof against each defendant.

If a particular defendant were prejudiced by joinder with a codefendant, that in and of itself would not mandate granting the motion. The standard under Federal Rule of Criminal Procedure 14 is not whether there is any prejudice, but whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984). No moving defendant has shown that he will suffer any prejudice that outweighs the goal of judicial economy.

Accordingly, defendants' challenges to joinder and their motions for severance are denied.

### Defendant Cutts' Motions to Suppress

Defendant Cutts challenges the issuance and execution of search warrants to search his residence and cellphones and moves to suppress all evidence seized pursuant to those searches.

Cutts argues that the warrant to search his apartment at Wheeler Avenue was not supported by probable cause, was based on stale information and information that was either deliberately false or gathered with reckless disregard for the truth. (Cutts Mem. of Law 4–5). With respect to the cellphones, Cutts argues that the search was not executed in a timely manner. *Id.* at 9–11.

The Government obtained search warrants to search the residences of defendants Brown, Cutts, Franklin, and Saunders based on a single affidavit setting forth probable cause as to each of the residences that the Government sought authorization to search. (See Affidavit of Special Agent Bryan Digirolamo).[3] The affidavit in support of the request to search Cutts's apartment asserts that there was probable cause to believe that Cutts was engaged in narcotics trafficking activities based on the facts plead in the Indictment and the following additional information: a Confidential Informant ("CI") who had proven reliable states that Brown and Cutts "operate" a crack distribution spot; there are recorded telephone calls in which the CI, Cutts and others negotiated drug transactions; additional information obtained from another source of information ("SOI"); and interaction between Brown and an undercover officer in May 2008. (Affidavit at 7).

The Affidavit asserts that there was probable cause to believe that Cutts resided at the Wheeler Avenue Premises, based on an arrest report prepared in connection

---

**2.** In *De Yian,* Judge Cote agreed with the view of the D.C. Circuit that a trial court may rely on a post-indictment proffer of expected trial evidence from the Government in support of its determination of whether joinder is proper. *See id.* at *10 ("Since the relationship between the various transactions is not an element of the offenses. I do not find that it

is necessary that the relationship justifying joinder appear in the indictment.").

**3.** Defendants Brown, Franklin, and Saunders do not challenge the issuance or execution of the warrants to search their residences, nor do they seek suppression of any evidence obtained from those searches.

with an arrest of Cutt's as recent as January 17, 2009. The report lists "1149 WHEELER AVENUE BRONX NEW YORK BSMNT" as Cutts' address, which is the address designation on Cutt's license. (Govt Memo, Exhibit B; *See also* Exhibit A, Affidavit of Special Agent Digeralamo at 9). The affiant asserts that there was probable cause to believe that the Wheeler Avenue Premises would contain evidence of the defendant's involvement in narcotics trafficking activities on the basis of the affiant's training and experience that individuals who are engaged in narcotics trafficking activities often maintain records and other evidence of their involvement in these activities at their residences. (Affidavit at 12–16).

There is a discrepancy in the documents provided by the Government regarding the proper address for defendant's apartment. The application for the search warrant and the search warrant return lists "1149 Wheeler, Bsmt Apt" as the appropriate designation, while an ATF report describing items found in the apartment lists the apartment as "1149 Wheeler Ave, rear apartment (1R)."

Inside Cutts's apartment, the agents found photographs, papers, and other identifying information associated with Cutts, as well as: two firearms and ammunition; a ballistic vest; and substantial amounts of powder cocaine, crack, and marijuana. (*See* Warrant Return).

On or about March 13, 2009, the Government obtained a search warrant to search the telephones that were seized from Cutts incident to his arrest.

The Fourth Amendment provides that search warrants shall not be issued, except "upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. The legal standard for determining whether a particular search warrant application is supported by probable cause is well established. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him ... there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasis added). Such determinations must be approached in a practical way, *id.* at 232, 103 S.Ct. 2317, because "probable cause is a flexible common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). "The process does not deal with hard certainties, but with probabilities.... [T]he evidence ... must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. at 231–32, 103 S.Ct. 2317 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

The duty of a court reviewing a lower court's probable cause determination is "simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (internal quotations omitted); *see United States v. Rosa*, 11 F.3d 315, 326 (2d Cir.1993); *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir.1993); *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir.1991). "A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.'" *Rosa*, 11 F.3d at 326 (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983)); *see Gates*, 462 U.S. at 236, 103 S.Ct. 2317; *Smith*, 9 F.3d at 1012. Indeed, "the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *Travisano*, 724

F.2d at 345; *accord United States v. Jackstadt,* 617 F.2d 12, 13 (2d Cir.1980).

■■■ Even in instances where evidence is seized pursuant to a warrant for which probable cause was lacking, the evidence nevertheless is admissible upon a showing that the officers who executed the warrant did so in "objective good faith." *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The test for ascertaining whether the agents acted in good faith requires assessment of "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n. 23, 104 S.Ct. 3405. The good faith exception is only inapplicable in situations: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Leon,* 468 U.S. at 923, 104 S.Ct. 3405; *see also United States v. Moore,* 968 F.2d 216, 222 (2d Cir.1992) (citing *Leon* ). If the reviewing court finds that the officers' reliance on the warrant was objectively reasonable, suppression is not warranted. *See, e.g., United States v. Roberts,* 852 F.2d 671, 675 (2d Cir.1988).

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held." 438 U.S, at 155–156, 98 S.Ct. 2674.

However, for a court to award an evidentiary hearing:

> The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks,* 438 U.S. at 171, 98 S.Ct. 2674.

■■■ Consequently, a defendant may challenge a search warrant affidavit on the basis of inaccuracies or omissions only if he or she can make a threshold showing that the "inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States v. Canfield,* 212 F.3d 713, 717–18 (2d Cir.2000) (quoting *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir.1998)).

■■■ In his initial moving papers, Cutts makes unsworn assertions—through his attorney—that his voice is not on any of the recorded conversations of narcotics transactions (Cutts Mem. of Law at 7–8), and that there was another apartment designated as the "Basement" that was resided in by someone other than Cutts (*id.* at 7). After the Government filed its opposition to the defense motions, Cutts's submitted an affidavit with his reply brief stating *inter alia:*

> 4. I have never had any business relationship with Harrison Brown, and I have never sold drugs with him.

5. I have never had any business relationship with Caleb Hooker, and I have never sold drugs with him.

6. I deny the charges in the indictment.

7. On March 4, 2009, I lived in apartment 1R of 1149 Wheeler Avenue, Bronx, New York, not in the basement apartment. The agents did not have a warrant to search my apartment, and they entered my apartment without consent.

Cutts Affidavit at ¶¶ 4–6.

Conspicuously missing is any reference to the allegation that Cutts' voice is not on any of the Government recordings. Cutts merely says that he denies involvement in the charged crimes. By offering such a broad-conclusory statement, Cutts does not begin to meet his burden of showing that the ATF special agent made deliberate or reckless falsehoods in his affidavit in support of the warrant to search the apartment. Cutts is not entitled to a hearing for simply stating, "I deny the charges in the indictment." *See Franks*, 438 U.S. at 171, 98 S.Ct. 2674.

Even if the Court were to consider the unsworn allegations presented by counsel and conclude that Special Agent Bryan Digirolamo statement about Cutts' voice being on the tapes was a "deliberate falsehood" or made with "reckless disregard for the truth," after excising the "tape information," there would still be sufficient facts to support a finding of probable cause. *Id.* 171–172, 98 S.Ct. 2674. Special Agent Digirolamo states in his affidavit that the agents were informed by a confidential informant—an informant who has been on the NYPD payroll for over two years and has provided what has proven to be reliable information (Affidavit n. 1)— "that Brown and Cutts operate a crack cocaine business in the vicinity of 182nd Street and Creston Avenue in the Bronx,"

and that the information provided by the CI was "corroborated by another source of information." (Digirolamo Affidavit at 10(a)). The agent, in his affidavit, also relied on information that was contained in the then sealed Indictment, including *inter alia* that: "Brown and Cutts operated a crack cocaine business in the vicinity of 182nd Street and Creston Avenue, Bronx, New York, in which Brown controlled sales from approximately 9:00 a.m. to 9:00p.m. daily, and Cutts controlled sales from approximately 9:00 p.m. to 9:00 a.m. daily." (Digirolamo Affidavit at 5). Indeed, the existence of an indictment naming Cutts as a member of the drug conspiracy creates, in itself, a rebuttable presumption of probable cause. *Cf. Rothstein v. Carriere*, 373 F.3d 275, 282–283 (2d Cir.2004).

With regard to the address description, Cutts does not dispute in his motion that the officers searched his actual residence within 1149 Wheeler Avenue. His argument is that the search warrant mistakenly described his apartment as 1149 Wheeler Avenue, Basement, Bronx, NY, instead of what he says is the proper description: Apartment 1R, Wheeler Avenue, Bronx, NY. Assuming that the warrant erroneously describes Cutts's residence as the "Basement" apartment when it is technically "Apartment 1R," the error was not sufficient to invalidate the warrant, particularly because any error was caused by the defendant's own voluntary decision to list "1149 Wheeler Avenue, Basement," as his home address on his drivers license. A warrant containing "partial misdescriptions of the place to be searched" is sufficient if "the officer executing the warrant could ascertain and identify the target of the search with no reasonable probability of searching another premises in error." *See Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir.1994). "Warrants have been upheld despite 'technical error,' such as an incor-

rect street address, when the possibility of actual error is eliminated by other information." *Id.* Here, as evidenced by the officers' successful location and search of Cutts's residence within the 1149 Wheeler Avenue building, the search warrant for the Wheeler Avenue Premises was valid despite any purported technical error in the warrant's description of Cutts's address.

Even if this Court found the warrant to be infirm based on the misdescription of the apartment, there would be no basis to suppress the evidence seized from the apartment since the officers executing the search were certainly acting in good faith. *See Leon,* 468 U.S. at 923, 104 S.Ct. 3405. Here, to the extent there was any error in the designation of the apartment within 1149 Wheeler Avenue that was occupied by the defendant, it was caused by the defendant's decision to list his apartment on his license as 1149 Wheeler Avenue, Basement Apartment, not as a result of any bad faith by the executing officers.

The balance of Cutts' challenges to the warrant are unpersuasive. Cutts argues that the warrant affidavits fail to establish probable cause to believe that his residence or his cellphones contain evidence of criminal activity because of an alleged absence of "particularized information" to justify a search of the apartment and phones (Cutts Mem. of Law 9–10). This assertion fails to take into account, among other things, the opinion of the affiant in both the Wheeler Avenue and cellphone search warrants that these premises and items would likely contain evidence of criminal activity. As the Second Circuit has recognized, a Government agent's expert opinion "is an important factor to be considered by the judge when making a probable cause determination." *United States v. Benevento,* 836 F.2d 60, 71 (2d Cir.1987) (internal quotation marks omit-

ted). Here, the affiant stated his opinion that the Wheeler Avenue Premises and cellphones contained evidence of criminal activity based on his training and experience with similar investigations. This Court is entitled to rely on that opinion, as well as the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information, located in his or her residence, or on communication devices used by the individual. *See United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985).

The defendant's staleness arguments also fails. First, the affidavit supporting the warrant states that there is probable cause to believe that Cutts and Brown "operate" a crack distribution operation (*see* Affidavit at 7), Thus, there is no apparent staleness issue with respect to the warrant. Second, even assuming that the last date to be considered in determining the recency of information supporting the search warrant is the end date of any charges in the Indictment, the Indictment itself alleges Cutts's involvement in conspiracies through 2008, and the warrant was issued in February 2009. In these circumstances there is no merit to any claim that information supporting the warrants was stale. *See Fama,* 758 F.2d at 838.

Cutts's assertion that the warrant for the electronic evidence was not "executed" in a timely manner is also meritless. Amendments to Rule 41 that were adopted by the Supreme Court earlier this year, and that are to become binding on December 1, 2009, clarify that a warrant may authorize the seizure and search of electronically stored information, and that "[u]nless otherwise specified, the warrant authorizes a later review of the [electronic] media or information consistent with the warrant. The time for executing the war-

rant ... refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Amendments to the Federal Rules of Criminal Procedure (March 26, 2009), *available at* http://www.supremecourtus.gov/orders/courtorders/frcr09.pdf (Supreme Court transmission of amended rules to Congress).

Accordingly, Cutts's challenges to the search warrants are denied.

*Post Arrest Statements*

The Government represents that it does not seek to introduce at trial Cutts's post-arrest statements. Accordingly, Cutts's motion to suppress these statements is moot. The Government is precluded from introducing these statements on its case-in-chief.

*Request for Early Disclosure Of Giglio and Brady*

With respect to all *Giglio* and 3500 material, the Court directs that the defendant be provided with this material at least three business days prior to trial. Earlier, of course, would be better.

To the extent defendant is asking the Court to compel earlier disclosure of these materials so that the defendant can learn the identity of the Government informant(s), that motion is denied. The identity of any informant will be disclosed when the Government provides the defense with the *Giglio* and 3500 material. If the Government represents that it will not be calling any informant as a witness, the Court will entertain a motion to compel the Government to disclose that informant's identity.

This constitutes the decision and order of the Court.